**Dolitia E. CRUMP and Benjamin A. Crump, Defendants-Appellants,**

v.

**Geraldine COLEMAN, Plaintiff-Appellee.**

**No. 3–279A43.**

Court of Appeals of Indiana, Third District.

July 18, 1979.

---

1.  *See*: Acts 1977, P.L. 340, § 150(b).

F. Laurence Anderson, Jr., Gary, for defendants-appellants.

Hilbert L. Bradley, Gary, for plaintiff-appellee.

HOFFMAN, Judge.

Defendants-appellants Dolitia E. Crump and Benjamin A. Crump appeal a judgment of Lake Superior Court, Civil Division, which awarded plaintiff-appellee Geraldine Coleman $7,360 for nursing and managerial services rendered.

The appeal raises four issues for review:

(1) whether the judgment is contrary to law because the evidence is sufficient to prove that Geraldine rendered the services voluntarily and without expectation of payment;

(2) whether there is any basis under the evidence for recovery by Geraldine against Benjamin;

(3) whether evidence of a family relationship between Geraldine and Dolitia gives rise to a presumption that the services were rendered gratuitously; and

(4) whether IC 1971, 32-2-1-1 (1978 Burns Supp.) bars recovery in the absence of a written memorandum.

The judgment is affirmed in part and reversed in part.

In her complaint, the plaintiff alleged that, at the defendants' request and pursuant to an oral agreement with the defendants, she performed nursing services for and managed the business affairs of the defendants from on or about February 15, 1975, up to and including November 22, 1976. She prayed for damages of $10,000, her estimation of the reasonable value of the services rendered.

Following a trial to the court, findings of act, conclusions of law and judgment were entered, in relevant part, as follows:

"FINDINGS OF FACT

"That on or about the 15th day of February, 1975, the plaintiff, a non-relative, at the request of the defendant, Dolitia E. Crump, who had suffered various illnesses agreed to render certain nursing services and to generally manage the affairs of the defendants with the understanding that the plaintiff would be compensated on a future date for services rendered.

2.

"That pursuant to the request of the defendants, plaintiff undertook and did render nursing services and manage defendant's affairs from approximately February 15, 1975 up to and including the 22nd day of November, 1976.

\*   \*   \*   \*   \*   \*

5.

"That the reasonable value of services rendered for managing defendant's affairs and nursing were established by plaintiff's witness to be from Fifteen ($15.00) Dollars to Thirty-Five ($35.00) Dollars per day.

6.

"That nursing and managerial services from on or about the 15th day of February, 1975 up to and including the 22nd day of November, 1976, consisted of Six Hundred Forty-Six (646) days.

"CONCLUSIONS OF LAW

1.

"That the law is with the plaintiff, Geraldine Coleman.

2.

"That the plaintiff rendering nursing and managerial services from the 15th day of February, 1975 up to an inclduding [sic] the 22nd day of November, 1976, at the special instance and request of the defendants, which reasonable value of services is Seven Thousand Three Hundred Sixty ($7,360.00) Dollars.

"JUDGMENT

"IT IS THEREFORE CONSIDERED, ADJUDGED AND DECREED that the defendants are indebted to the plaintiff for the reasonable value of services rendered in the amount of Seven Thousand Three Hundred Sixty ($7,360.00) Dollars, with costs and interest to accrue at the rate of six percent (6%) from the date of judgment. Judgment accordingly."

Issue I.

■ Dolitia argues that the judgment for Geraldine is contrary to law because the evidence is sufficient to prove that Geraldine rendered the services voluntarily and without expectation of payment.

In *Schabler et al. v. Indpls. Morris Plan Corp.* (1968), 142 Ind.App. 319, at 321-322, 234 N.E.2d 655, at 657, this Court said:

"It is the general rule that if the undisputed evidence entitled a litigant to a verdict which has been denied him, such verdict is contrary to law. On appeal, to determine this question, we may consider

only the evidence most favorable to the appellee, together with all reasonable inferences which may be drawn therefrom. *Hinds, Executor of the estate of Sickels, deceased, etc., v. McNair, et al.,* (1955), 235 Ind. 34, 41, 129 N.E.2d 553.

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court or jury has reached an opposite conclusion, that the decision of the trial court or the verdict of the jury will be set aside on the ground that it is contrary to law. *Pokraka et al., v. Lummus Co.* (1952), 230 Ind. 523, 532, 104 N.E.2d 669."

Geraldine testified that Dolitia telephoned her on February 15, 1975, and asked her to come to Dolitia's house which she did. She testified as follows about their subsequent conversation:

"Q. Was there any conversation at the time between you and her as to taking care of the business?

"A. That was the purpose of the call, yes.

"Q. What did you all actually discuss at that time in relation to taking care of her business?

"A. She told me she had many relatives but didn't any of them come and see about her or do anything for her and she understood from her husband that we were relatives. She asked me would I take care of her business and take care of her, and that she would see that I would get paid for whatever I would do. I agreed."

Harry A. Psimos, an attorney who provided legal services for both Geraldine and Dolitia and whose deposition was admitted into evidence by agreement of the parties, testified that Dolitia told him Geraldine was to be compensated for the services she was performing for Dolitia. Geraldine testified that she overheard Dolitia make this statement to Psimos.

This Court cannot say as a matter of law that the evidence leads to but one conclusion opposite to that reached by the trial court. The evidence supports both the trial

court's express finding that an oral agreement existed between Geraldine and Dolitia, and the trial court's implied finding that Geraldine did not render the services voluntarily and gratuitously with no expectation of compensation.

## Issue II.

■ Benjamin argues that no evidence was adduced at trial of any express contract, contract implied in fact, or contract implied in law between himself and Geraldine to justify the judgment against him. It is well established that no one can be held to pay for services unless there is an express or implied promise to pay. There must be a request and either an express agreement to pay or circumstances from which a promise can be implied. *Warring v. Hill* (1883), 89 Ind. 497.

■ A perusal of the record reveals Benjamin's contention to be correct. Geraldine testified that, on February 15, 1975, the date of her oral agreement with Dolitia, Benjamin and Dolitia were divorced and he was living in Ohio. He clearly was not a party to that agreement and there is no evidence of any other agreement existing between Geraldine and Benjamin.

Benjamin returned to Indiana in September 1975, remarrying Dolitia at some point and residing with her when he was not a patient in a hospital or nursing home. Geraldine's contact with Benjamin occurred under the following circumstances: In the aftermath of a physical attack on Dolitia by Benjamin, Benjamin was admitted to the hospital for surgery to implant a pacemaker and Dolitia was unable to make the necessary arrangements because of her physical condition. At Dolitia's request, Geraldine conferred by telephone with hospital personnel and Dolitia's attorney and made daily trips to the hospital to check on Benjamin's progress.

When Benjamin was to be discharged, Dolitia did not want him returning to her home because they were not married and she was afraid of him. She asked Geraldine to pack Benjamin's clothes and take them

to the hospital. Geraldine conferred by telephone with welfare and veterans officials in an effort to find somewhere for Benjamin to go. She washed and ironed his clothes, packed them, and shipped them to the hospital. She accompanied Dolitia when Dolitia transported Benjamin from the hospital to a nursing home and, because Dolitia could not physically do so, helped Benjamin into the nursing home and into bed.

After Benjamin was discharged from the nursing home and had moved in with Dolitia, Geraldine cared for both of them when there was no paid housekeeper to do so. After Dolitia was hospitalized with a heart attack, Geraldine hired, assisted and supervised paid housekeepers who cared for Benjamin.

The evidence thus shows that Geraldine acted in Dolitia's stead in doing for Benjamin, and in conjunction with his affairs, those things Dolitia would have done herself if physically able to do so. Geraldine's care of Benjamin was a service she was performing for Dolitia at Dolitia's request and for which she will be compensated by the recovery of the $7,360 judgment against Dolitia. There is no evidence that Benjamin requested Geraldine to render any services either for himself or Dolitia.

That part of the trial court's judgment awarding recovery to Geraldine against Benjamin is thus contrary to law and must be reversed.

### Issue III.

Dolitia contends that the fact that Geraldine's sister was married to Dolitia's first cousin brings this case within the family relationship doctrine and creates a presumption that Geraldine's services were rendered gratuitously.

A presumption of gratuity does arise where services are rendered and the parties live together in a family relationship. *Wilhoite v. Beck* (1967), 141 Ind.App. 543, 230 N.E.2d 616. In *Wilhoite*, 141 Ind. App. at 551, 230 N.E.2d at 621, the term "family," within the meaning of the family relationship doctrine, is defined as:

" 'a collective body of persons who form one household, under one head and one domestic government, and who have reciprocal, natural or moral duties to support and care for each other."

Geraldine did not live with Dolitia and they were not a "family" as above defined, and their distant relationship by marriage is insufficient to create the presumption. *See: Zearing v. Walters* (1954), 125 Ind. App. 202, 122 N.E.2d 625.

### Issue IV.

Dolitia's last contention is that the Statute of Frauds bars Geraldine's recovery in the absence of a written memorandum evidencing their agreement.

IC 1971, 32-2-1-1 (1978 Burns Supp.) provides, in part:

"No action shall be brought in any of the following cases:

\*     \*     \*     \*     \*     \*

"Sixth. Upon an agreement, promise, contract or warranty of cure relating to medical care or treatment; Provided, however, That nothing in this subsection affects the right to sue for malpractice or negligence.

"Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized   .   .   .."

The record shows the following services rendered for Dolitia in addition to those previously mentioned in conjunction with Benjamin: securing legal advice, providing transportation, exercising her power of attorney in real estate and banking matters, making telephone calls to third parties, making deliveries, preparing meals and feeding, bathing and rubbing down, and, while Dolitia was hospitalized, combing her hair, changing her clothes, and holding an oxygen dispenser in place over Dolitia's face.

This Court agrees with Geraldine that the intent of the Legislature in adding subsection six to IC 1971, 32–2–1–1 was not to provide for a limitation on actions for such incidental home nursing services rendered by lay persons, but to provide a limitation on actions involving providers of professional medical care and services. This is shown by the express exclusion from the coverage of subsection six of actions for malpractice and negligence.

The trial court correctly ruled that Geraldine's action for services rendered was not barred by IC 1971, 32–2–1–1 (1978 Burns Supp.).

The judgment of the trial court against Dolitia E. Crump is affirmed; the judgment against Benjamin A. Crump is reversed.

Affirmed in part and reversed in part.

GARRARD, P. J., and STATON, J., concur.