## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2019, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
|---|---|
| Sabrina Graham | David A. Smith |
| Brownsburg, Indiana | Bedford, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sabrina Graham, *Appellant-Plaintiff,* | July 2, 2019 |
| | Court of Appeals Case No. 18A-PL-2262 |
| v. | Appeal from the Martin Circuit Court |
| Thomas S. Wininger, *Appellee-Defendant.* | The Honorable Lynne E. Ellis, Judge |
| | Trial Court Cause No. 51C01-1512-PL-243 |

**Tavitas, Judge.**

## Case Summary

[1] Sabrina Graham, pro se, appeals the trial court's judgment regarding her claim against her brother, Thomas Wininger. We affirm.

# Issues

Graham raises numerous issues, which we restate as:

    I.      Whether the trial court's judgment in favor of Wininger regarding the alleged oral agreement is contrary to law.

    II.     Whether the trial court properly conducted the summary judgment and bench trial proceedings.

# Facts

This litigation concerns a family dispute over payment for services allegedly rendered to a sibling. Graham and Wininger are sister and brother. Graham is a registered nurse, and Wininger is a veteran, who was injured during his service in the Army in the late 1970's. Wininger sustained a traumatic brain injury in a fall, which caused seizures, memory loss, and behavioral issues. According to Graham, between 1998 and 2013, she assisted Wininger with filing claims for veterans' benefits and social security benefits, arranging medication and healthcare, and building a house.

Graham claims that, in 2001 or 2002, Graham and Wininger reached an oral agreement whereby, in exchange for Graham's assistance, Wininger agreed to pay Graham thirty percent of any lump sum payment of veterans' benefits that Wininger received. After Wininger received a lump sum payment in 2006, Wininger repaid Graham for funds that she spent building his house except for approximately $600.00. Graham contends that they also renegotiated their arrangement. According to Graham, Wininger agreed to give Graham fifty percent of any lump sum payment of veterans' benefits if he received an earlier

effective date of his benefits, which would result in a larger lump sum payment. In 2013, Wininger received a lump sum payment of veterans' benefits of $442,148.00. Wininger was represented by Disabled American Veterans ("DAV") during the proceedings regarding the veterans' benefits. Graham argues that she is entitled to payment of $221,574.00 from Wininger, which Wininger has refused to pay.

[5] In June 2015, Graham filed a complaint against Wininger alleging the following claims: (1) conversion; (2) fraud; (3) constructive fraud; (4) promissory estoppel and misrepresentation; (5) unjust enrichment and quantum meruit; (6) breach of oral contract; and (7) implied, constructive or quasi contract.[1] Graham also requested treble damages and attorney fees. Graham was represented by Attorney Gregory Black during the majority of the proceedings.

[6] In December 2016, the trial court held a bench trial. At the end of Graham's case-in-chief, Wininger moved for judgment on the evidence pursuant to Indiana Trial Rule 50. Graham argued that Trial Rule 50 did not apply in bench trials, and Wininger argued that, if a ruling under Trial Rule 50 was inappropriate, he was entitled to summary judgment under Trial Rule 56(B). The trial court denied Wininger's motion for judgment under Trial Rule 50 and allowed Wininger to file a motion for summary judgment. During a hearing on

---

[1] The complaint was originally filed in Hendricks County. It was later transferred to Martin County.

Wininger's motion for summary judgment, the trial court seemed inclined to find genuine issues of material fact, which would have precluded summary judgment. Wininger then filed a motion to withdraw his motion for summary judgment. Over Graham's objection, the trial court granted Wininger's motion to withdraw the motion for summary judgment on July 28, 2017. The trial court then set a date for the bench trial to resume.

[7] Graham's counsel filed a motion to withdraw, and Graham, pro se, then filed a motion for summary judgment. In response, Wininger filed a motion for extension of time, a motion for leave to take Graham's deposition, and a motion to vacate the trial date. The trial court granted Wininger's motions. After Wininger filed a response to Graham's motion for summary judgment and Graham filed a reply, the trial court denied Graham's motion for summary judgment on February 28, 2018. The trial court then set the matter for the bench trial to resume.

[8] On May 21, 2018, the bench trial was completed. The trial court then entered the following order:

> 1. Judgment in favor of the Plaintiff, Sabrina Graham, in the amount of Six Hundred Dollars ($600.00) and against Defendant, Thomas Wininger, for monies due and owing to the Plaintiff which she expended for the completion of the building of Defendant's home.
>
> 2. Judgment in favor of Defendant, Thomas Wininger, and against Plaintiff, Sabrina Graham, for all other claims and relief requested in Plaintiff's Complaint.

Appellant's App. Vol. II p. 29. Graham now appeals.

## Analysis

Graham appeals the trial court's denial of her claim for half of Wininger's lump sum recovery of veterans' benefits. Before addressing her arguments, we note that "a pro se litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). "An appellant who proceeds pro se is held to the same established rules of procedure that trained legal counsel is bound to follow and, therefore, must be prepared to accept the consequences of his or her action." *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), *trans. denied, cert. denied*, 136 S. Ct. 227 (2015).

Although we prefer to decide cases on their merits, arguments are waived where an appellant's noncompliance with the rules of appellate procedure is so substantial it impedes our appellate consideration of the errors. *Id.* Indiana Appellate Rule 46(A)(8)(a) requires that the argument section of a brief "contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ." We will not consider an assertion on appeal when there is no cogent argument supported by authority and there are no references to the record as required by the rules. *Id.* We will not become an advocate for a party or

address arguments that are inappropriate or too poorly developed or expressed to be understood. *Id.*

[11] Because Graham did not prevail at trial, she appeals from a negative judgment.[2] A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id.* To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id.* A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Id.* We may neither reweigh the evidence nor judge the credibility of the witnesses. *OVRS Acquisition Corp. v. Cmty. Health Servs., Inc.*, 657 N.E.2d 117, 125 (Ind. Ct. App. 1995), *trans. denied*.

---

[2] Graham very briefly mentions the trial court's lack of findings of fact and conclusions of law. Although Graham's counsel filed a written request for findings of fact and conclusions of law pursuant to Indiana Trial Rule 52 and the parties submitted proposed findings, the trial court failed to issue findings of fact and conclusions of law. A better practice here would have been for the trial court to issue findings of fact and conclusions of law as required by Trial Rule 52, and we urge the trial court to issue the required findings of fact and conclusions of law in the future. Graham, however, made no argument in her brief regarding this issue and cites no authority, and accordingly, the issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a). In fact, both parties apply a negative judgment standard of review. *See* Appellee's Br. pp. 22-23; Appellant's Reply Br. p. 9. We will, therefore, utilize a negative judgment standard of review.

### I. Oral Agreement

[12] Each of Graham's claims listed in her complaint, along with her requests for treble damages, punitive damages, and prejudgment interest, depends on the existence of an oral agreement between Graham and Wininger for Wininger to pay fifty percent of any lump sum payment of veterans' benefits to Graham in exchange for services performed by Graham.[3]

[13] "'[W]here one accepts valuable services from another the law implies a promise to pay for them.'"[4] *Estate of Prickett v. Womersley*, 905 N.E.2d 1008, 1012 (Ind. 2009) (quoting *Schwartz v. Schwartz*, 773 N.E.2d 348, 354 (Ind. Ct. App. 2002). "Where services are performed by one not a member of the recipient's family, an agreement to pay may be implied from the relationship of the parties, the situation, the conduct of the parties, and the nature and character of the services rendered." *Cole v. Cole*, 517 N.E.2d 1248, 1250 (Ind. Ct. App. 1988). No one, however, can be held to pay for services unless there is an express or implied promise to pay. *Crump v. Coleman*, 181 Ind. App. 414, 418, 391 N.E.2d 867, 870 (1979). "There must be a request and either an express agreement to pay or

---

[3] The trial court did award Graham a judgment for $600.00 to reimburse her for expenses she paid to build Wininger's residence. Neither party contests that judgment, and we do not address it further.

[4] "[W]here the parties are family members living together, and the services are rendered in the family context, no implication of a promise to pay by the recipient arises." *Estate of Prickett*, 905 N.E.2d at 1012 (quoting *Schwartz*, 773 N.E.2d at 355). Instead, in these circumstances, the rebuttable presumption is that services are gratuitous. "The public policy advanced by this presumption is that family members 'have reciprocal, natural, and moral duties to support and care for each other.'" *Id.* (quoting *Cole v. Cole*, 517 N.E.2d 1248, 1250 (Ind. Ct. App. 1988)). In *Cole*, we defined "family" as "a collective body of persons who form one household, under one head, and is subject to one domestic government, and who have reciprocal, natural, and moral duties to support and care for each other." *Cole*, 517 N.E.2d at 1250. There is no evidence that Graham and Wininger lived together during the time the alleged services were performed.

circumstances from which a promise can be implied." *Id.* "Whether the services or payments were rendered gratuitously or not is a question for the trier of fact." *Cole*, 517 N.E.2d at 1250.

[14] We also note that, in general, the existence of a contract is a question of law. *Barrand v. Martin*, 120 N.E.3d 565, 572 (Ind. Ct. App. 2019). The basic requirements of a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Id.* "'For an oral contract to exist, parties have to agree to all terms of the contract.'" *Id.* (quoting *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005), *trans. denied*). If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed. *Id.* "The party urging the validity of a contract bears the onus of proving its existence." *OVRS Acquisition Corp.*, 657 N.E.2d at 125. "When the evidence as to the terms of an oral contract is conflicting, or the meaning doubtful, it is for the [trier of fact] to ascertain the intention of the parties" and to determine the terms of the contract. *Annadall v. Union Cement & Lime Co.*, 165 Ind. 110, 74 N.E. 893, 894 (1905).

[15] Graham bore the burden of demonstrating an oral contract between Graham and Wininger. Graham claims that, in 2001 or 2002, Graham and Wininger reached an oral agreement whereby, in exchange for Graham's assistance, Wininger agreed to pay Graham thirty percent of any lump sum payment of veterans' benefits that Wininger received. After Wininger received a lump sum payment in 2006, Wininger repaid Graham for most of the funds that she spent

building his house. According to Graham, they renegotiated their arrangement, and Wininger agreed to give Graham fifty percent of any lump sum payment of veterans' benefits if he received an earlier effective date of his benefits, which would result in a larger lump sum payment. Wininger, on the other hand, testified that he did not agree to this arrangement.[5]

[16] This case demonstrates the inherent difficulty in proving oral contracts. Our standard of review requires that we view the evidence in a light most favorable to Wininger. Graham's arguments are merely a request that we reweigh the evidence as to the existence of an oral contract and the credibility of the parties, which we cannot do. Graham failed to meet her burden of demonstrating an oral contract between Graham and Wininger. *See, e.g., Barrand*, 120 N.E.3d at 573 ("The trial court, therefore, did not err by finding that because Mother and Father had different understandings of their purported agreement, they did not have an enforceable agreement regarding Father's child support obligation."). Accordingly, the trial court's judgment is not contrary to law.

---

[5] Graham argues that Wininger's testimony is incredibly dubious. "Within the narrow confines of the incredible dubiosity rule, a court may impinge upon a jury's function to judge the credibility of a witness." *Dallas v. Cessna*, 968 N.E.2d 291, 298 (Ind. Ct. App. 2012) (citing *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)). This rule, however, does not apply in civil actions. *Id.* at 299.

## I. Procedural Issues

### A. Bias of Trial Court

[17] Graham argues that the trial court was biased against her because she felt "personally attacked, belittled, embarrassed, and humiliated by the public statements" of the trial court. Appellant's Br. p. 41. Adverse rulings and findings by a trial judge are not sufficient reason to believe the judge has a personal bias or prejudice. *L.G. v. S.L.*, 88 N.E.3d 1069, 1073 (Ind. 2018). The law presumes that a judge is unbiased and unprejudiced. *Id.* To overcome this presumption, the moving party must establish that the judge has personal prejudice for or against a party. *Id.*

[18] Our extensive review of the record reveals no belittling or attacking of Graham by the trial court. Rather, the trial court was patient with Graham and Graham's counsel despite repeated and protracted efforts to admit evidence that the trial court had excluded. The main basis of Graham's claims, however, seems to be that the trial court repeatedly ruled against her. Adverse rulings do not demonstrate bias or prejudice. Graham's argument fails.

### B. Admission of Evidence

[19] Graham takes issue with the trial court's exclusion of a voicemail left by Wininger allegedly offering to settle the claim for $200,000.00. The trial court excluded the evidence because the parties agreed there was never a contract for Wininger to give Graham $200,000.00; rather, the alleged agreement was for

fifty percent of the lump sum payment. Graham complains, however, that the voicemail was an admission of the alleged original oral agreement.

[20] Graham cites no relevant authority to demonstrate that this evidence was admissible. In fact, Graham cites only Indiana Trial Rule 36 and argues that Wininger's admission was admissible at the bench trial. Admissions under Trial Rule 36 are not automatically admissible at a trial. *Kerkhof v. Kerkhof*, 703 N.E.2d 1108, 1111 (Ind. Ct. App. 1998). "[A]n admission may be offered into evidence at the hearing where the facts established in that admission are not subject to dispute, but the admissibility of the facts may be challenged." *Id.* Graham, consequently, must demonstrate the admissibility of the voicemail. Graham, however, has failed to make a cogent argument establishing the admissibility of the voicemail. *See* Ind. Appellate Rule 46(A)(8)(a).

[21] Waiver notwithstanding, even if the evidence was admissible, any error in its exclusion was harmless. Graham does not argue that the voicemail resulted in a contract; rather, she argues it was simply more evidence of an oral agreement for her to receive fifty percent of Wininger's lump sum award. The voicemail was merely cumulative of other evidence presented at the bench trial.

### C. Summary Judgment and Bench Trial Proceedings

[22] The remainder of Graham's arguments pertain to the conduct of the summary judgment and bench trial proceedings. "Provided that a trial court fulfills its duty to conduct trials expeditiously and consistent with the orderly administration of justice, a trial court has discretion to conduct the proceedings

before it in any manner that it sees fit." *J.M. v. N.M.*, 844 N.E.2d 590, 601 (Ind. Ct. App. 2006), *trans. denied*. "We review the decisions that a trial court makes regarding the conduct of the proceedings for an abuse of that discretion." *Id.*

[23] Here, Graham presented her case-in-chief, and Wininger moved for judgment on the evidence pursuant to Indiana Trial Rule 50. Graham's counsel pointed out that judgment on the evidence was improper in a bench trial, and Wininger's counsel argued that, if Trial Rule 50 was inapplicable, summary judgment under Trial Rule 56 was applicable. The trial court then paused the bench trial proceedings to allow Wininger to file a motion for summary judgment. During a hearing on Wininger's motion for summary judgment, the trial court indicated it believed that genuine issues of material fact existed. Wininger then withdrew his motion for summary judgment over Graham's objection.

[24] Graham then filed her own motion for summary judgment. As part of those summary judgment proceedings, Wininger requested permission to reopen discovery to take Graham's deposition, which the trial court allowed. The trial court denied Graham's motion for summary judgment and set a date for the bench trial to resume. At the bench trial, Graham, who had already completed presenting her evidence, sought to reopen her case and present more evidence. The trial court denied Graham's motion, and the bench trial was completed.

Graham makes several arguments concerning these proceedings. Graham argues: (1) the trial court erred by allowing Wininger to file a motion for summary judgment after Graham presented her case-in-chief; (2) the trial court erred by allowing Wininger to later withdraw his motion for summary judgment; (3) the trial court erred by allowing Wininger to conduct discovery after Graham filed a motion for summary judgment; and (4) the trial court erred by denying Graham's request to reopen her case.[6] We will briefly address each argument.

The trial court was correct that a motion for judgment on the evidence pursuant to Indiana Trial Rule 50(B) was improper. *See Alkhalidi v. Indiana Dep't of Correction*, 42 N.E.3d 562, 564 n.2 (Ind. Ct. App. 2015). In general, where such a motion is made during a bench trial, "it should have been treated as an Indiana Trial Rule 41(B) motion for involuntary dismissal."[7] *Id.* The trial court

---

[6] Although Graham contends that the trial court erred by denying her motion for summary judgment, she makes no argument concerning the actual substance of the motion for summary judgment. The issue, therefore, is waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a).

[7] Indiana Trial Rule 41(B) provides:

> After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits.

here, however, allowed Wininger to instead file a motion for summary judgment pursuant to Indiana Trial Rule 56(B).

[27] Indiana Trial Rule 56(B), which governs summary judgment motions, provides: "A party against whom a claim . . . is asserted . . . may, *at any time*, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." The trial court was, accordingly, within its discretion to pause the bench trial to allow Wininger to file a motion for summary judgment.

[28] We pause, however, to note our concerns with this procedure. The whole purpose of summary judgment is to terminate litigation and avoid unnecessary trials where there is no factual dispute and the issue may be determined as a matter of law. *Bragg v. Kittle's Home Furnishings, Inc.*, 52 N.E.3d 908, 919 (Ind. Ct. App. 2016); *Reeder v. Harper*, 788 N.E.2d 1236, 1246 (Ind. 2003) (Boehm, J., dissenting). By staying the bench trial to allow Wininger (and later Graham) to file motions for summary judgment, the bench trial was delayed significantly. The purpose of a motion for summary judgment is to save the parties from the expense of a trial where summary judgment is warranted. The procedure used here had the opposite effect. This defeats the purpose of a motion for summary judgment, and we do not believe this was the intent of Trial Rule 56. Given the language of Trial Rule 56 allowing a motion for summary judgment to be filed at any time, however, we cannot say the trial court abused its discretion by

delaying the remainder of the trial to allow Wininger to file his motion for summary judgment.[8]

[29]    We next address Graham's argument regarding the withdrawal of Wininger's motion for summary judgment. Given the trial court's statements during the summary judgment hearing regarding the existence of genuine issues of material fact, we find no rule or authority that would have prevented the trial court from allowing Wininger to withdraw his motion for summary judgment. Graham, moreover, cites no relevant authority that would have prevented the withdrawal. Graham has waived this issue for failure to present cogent argument.[9] *See* Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, even if Wininger's motion had been denied, it appears that the trial court would have denied Wininger's motion for summary judgment. It is unclear how Graham's substantial rights were impacted by the withdrawal. Although Graham contends that she was "compelled to file for summary judgment," Graham's argument is not cogent and is, therefore, waived. Appellant's Br. p. 53.

[30]    As for the trial court allowing Wininger to perform discovery after Graham filed her motion for summary judgment, we note that Trial Rule 56(F) allows

---

[8] We note that the Federal Rules of Civil Procedure require a motion for summary judgment to be filed "at any time until 30 days after the close of all discovery" unless "a different time is set by local rule or the court orders otherwise." Fed. R. Civ. P. 56(b).

[9] Graham also argues that the trial court erred by denying Graham's motion for attorney fees and sanctions for Wininger's withdrawal of his motion for summary judgment. Graham argues that she is entitled to fees based on Indiana Code Section 34-52-1-1 because the motion was "frivolous or litigated in bad faith." Appellant's Br. p. 49. Graham failed to demonstrate that the motion was frivolous or litigated in bad faith. This argument fails.

the trial court to "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" in responding to a motion for summary judgment. As a result, the trial court was within its discretion to allow Wininger to conduct discovery after Graham filed a motion for summary judgment.[10]

[31] Finally, as for the trial court's refusal to allow Graham to reopen her case, we note that a trial court has discretion to allow a party to reopen its case to present more evidence. *See Quigg Trucking v. Nagy*, 770 N.E.2d 408, 410-13 (Ind. Ct. App. 2002). Graham sought to reopen her case to present evidence of the voicemail, which the trial court had already repeatedly excluded from the bench trial. Under these circumstances, we cannot say that the trial court abused its discretion in denying Graham's request.

[32] Our review reveals that the trial court acted in accordance with the trial rules and did not abuse its discretion in conducting the summary judgment proceedings and bench trial. Graham's arguments fail.

---

[10] Graham argues that the delays in the bench trial allowed Wininger to spend "money rightfully owed to Graham." Appellant's Reply Br. p. 23. Graham complains that Wininger has purchased a "new truck, a new tractor and a new brush [sic] hog and who knows how much he has paid his attorney in legal fees." *Id.* This commentary on how Wininger spends his money is argumentative, inappropriate, and irrelevant.

# Conclusion

[33] The trial court's judgment against Graham regarding the lack of existence of an oral agreement with Wininger was not contrary to law. Graham's procedural arguments also fail. We affirm.

[34] Affirmed.


Bradford, J., concurs.

Crone, J., concurs in result without an opinion.