## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2017, 7:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Darren A. Craig
Michele Lorbieski Anderson
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Robert L. Burkart
Jean M. Blanton
Ziemer Stayman Weitzel &
Shoulders, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alisa K. Wright,

*Appellant-Plaintiff,*

v.

Greg Menefee and Julie Menefee,

*Appellees-Defendants*

December 21, 2017

Court of Appeals Case No.
41A01-1703-CC-603

Appeal from the Johnson Superior Court

The Honorable Marla Clark, Judge

Trial Court Cause No.
41D04-1409-CC-902

**May, Judge.**

[1] Alisa K. Wright ("Alisa") appeals the trial court's denial of attorney fees. Greg Menefee ("Greg") and Julie Menefee ("Julie") (collectively, "the Menefees") cross appeal the trial court's denial of their Motion for Judgment on the

Evidence. Based on the Menefees' cross appeal, Alisa argues she should receive appellate attorney fees. We affirm the trial court's rulings and decline to award appellate attorney fees.

# Facts and Procedural History[1]

Alisa was married to Lance Wright ("Lance"). They have since divorced. During their marriage, they were friends with the Menefees. The couples met decades ago and, over the years, they vacationed together and loaned each other money for business ventures. Sometimes they signed written agreements for the loans; other times they did not.

At one point, Alisa and Lance bought a vacation home for the couples to share and the Menefees took "a little over two years" to pay back their portion of the cost of the property, without a signed agreement. (Tr. Vol. II at 32.) At another point, with a signed promissory note, Alisa and Lance loaned the Menefees $200,000 to be paid back over a short period of time. In 2004, Alisa started a company called BioConvergence. Greg and Julie loaned the company money on a short-term basis. Eventually, Greg and Julie owned units in the company.[2]

---

[1] We held oral argument on this matter on December 5, 2017, in the Indiana Court of Appeals Courtroom. We thank counsel for their able advocacy.

[2] Witness Kathryn Eddy, one-time Chief Financial Officer of BioConvergence, explained that because "BioConvergence is an LLC" stocks are "called 'units.'" (Tr. Vol. II at 191.)

[4]  Around the end of November 2011, Greg approached Alisa and Lance about needing money for his business. He had a business loan that required he have additional personal liquidity. He asked Alisa and Lance to loan him the funds necessary to meet the liquidity requirements but, because he was not allowed to increase his personal debt, he requested they write in the note section of the checks that they were gifts.

[5]  On December 10, 2011, Alisa wrote two checks, each for $13,000.[3] One was to the order of Julie Menefee and the other was to Greg Menefee. Check 2507 indicates it is "Alisa's gift to Julie." (Exhibit Vol. IV at 6.)[4] Check 2509 indicates it is "Alisa's gift to Greg." (*Id.* at 8.) Lance did the same with checks 2506 and 2508. On January 1, 2012, Alisa wrote two more checks, each for $13,000 to Greg and Julie, with the same gifting language. At the same time, Lance also wrote two more checks, each for $11,000, with the same gifting language, to Greg and Julie. Thus, between December 10, 2011, and January 2, 2012, Lance and Alisa wrote checks totaling $100,000 to Greg and Julie.

[6]  Alisa and Lance started divorce proceedings soon thereafter. Citing fears regarding his and Julie's financial interest in BioConvergence, Greg expressed concerns about Alisa's mental stability. Along with testifying on behalf of

---

[3] At that time, $13,000 was the maximum financial gift that could be excluded for tax purposes. https://taxfoundation.org/federal-estate-and-gift-tax-rates-exemptions-and-exclusions-1916-2014/ (last accessed November 20, 2017).

[4] The trial court clerk's failure to consecutively number the pages of the Exhibit volume greatly hindered our review of the record. We cite the page numbers as they appear consecutively in the PDF of the Electronic Record. *See* Ind. Appellate Rule 29(A) (Exhibits are to be filed in accordance with Appendix A(2)(a), which provides: "Each volume of the Transcript shall be independently and consecutively numbered at the bottom. Each volume shall begin with numeral one on its front page.").

Lance during Alisa and Lance's divorce proceeding, Greg and Julie became involved in litigation surrounding Alisa's company, BioConvergence.

[7] Alisa sent an email to Greg and Julie on May 3, 2013, referencing the $100,000 transaction, that said:

> Repayment of $100,000 due in Dec 2012 and Jan 2013 not received. This is the short term funding provided equally by Lance and Alisa in Dec 2011 ($52,000) and Jan 2012 ($48,000) to Greg and Julie equally to help them navigate financial issues with AGM. Although offered, we declined interest with repayment due to the short duration before repayment.

(Exhibit Vol. IV at 16.)

[8] In documents given to their attorney prior to litigation about BioConvergence, the Menefees noted they had received $100,000 "from Lance and Alisa as a loan marked gifting. The loan came from both Lance and Alisa and will need to be returned in the same manner to each." (*Id.* at 19.) In depositions taken during litigation between the Menefees and Alisa about Alisa's company BioConvergence, the Menefees both stated the money was a loan. In July 2013, Alisa's sister called Julie, and during that phone conversation, Julie referred to the money as a loan.

[9] On September 8, 2014, Alisa filed a lawsuit demanding the Menefees repay the $100,000. On October 23, 2015, she filed a motion for summary judgment but it was denied because "the designated evidence demonstrates a genuine issue of material fact with regard to both Alisa and Lance's intent at the time they gave

the Menefees the money at issue here." (Appellee's App. Vol. III at 146.) At trial, Alisa claimed the money was a loan, not a gift, and testified the loan was "due by January 1, 2013." (Tr. Vol. II at 65.) Lance, as a witness for the Menefees, claimed he intended to gift the money to the Menefees. The Menefees, while claiming their depositions wherein they referred to the money as a loan were truthful, testified the money was meant as a gift. In the alternative, they claimed recovery for the checks written in December 2011 is barred by the Statute of Frauds[5] because they were not due until January 1, 2013, which is over a year from when they were given.

[10]    In January 2017, the jury found for Alisa for the full $100,000, plus pre-judgment interest. Alisa then filed a motion for attorney fees. The Menefees objected and filed a Motion for Judgment on the Evidence, citing Lance's intent for the money to be a gift and the Statute of Frauds. The trial court held a hearing and denied both motions.

# Discussion and Decision

[11]    Alisa appeals the trial court's denial of attorney fees. She claims the Menefees violated Indiana Code section 34-52-1-1 by asserting a defense that is frivolous, unreasonable, groundless, and asserted in bad faith. The Menefees contend their arguments were not in violation of Indiana Code section 34-52-1-1

---

[5] Indiana's codification of the Statute of Frauds requires a contract must be in writing if the agreed upon action "is not to be performed within one (1) year from the making of the agreement." Ind. Code § 32-21-1-1(b)(5).

because, although they advanced conflicting theories at trial, it was Alisa's burden to prove the money was a loan and not a gift and, even if it was a loan, it was partially barred by the Statute of Frauds. In her reply, Alisa requests appellate attorney fees because she claims the Menefees continue to violate Indiana Code section 34-52-1-1.

[12] The Menefees cross-appeal the trial court's denial of their Motion for Judgment on the Evidence because: 1) Lance intended his portion of the checks to be a gift, and 2) recovery of the December checks is barred by the Statute of Frauds. Alisa responds the denial was correct because evidence was presented to allow the jury to find the money was a loan, she was entitled to the full amount, and it was not barred by the Statute of Frauds.

[13] We address the cross-appeal first.

## A. Judgment on the Evidence – Cross-Appeal

[14] "The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence." *Kimbrough v. Anderson*, 55 N.E.3d 325, 336 (Ind. Ct. App. 2016), *trans. denied*. The trial court has broad discretion in granting or denying such a motion and we will reverse only for an abuse of that discretion. *Id.*

> When we review a trial court's ruling on a motion for judgment on the evidence, we are bound by the same standard as the trial court. We may not substitute our judgment for that of the jury on questions of fact nor should a motion for judgment on the evidence be granted because the evidence preponderates in favor of the moving party. Rather we determine only: (a) whether there exists any reasonable evidence supporting the claim; and

(b) if such evidence does exist, whether the inference supporting the claim can be drawn without undue speculation.

*Id.* (internal citations omitted).

Indiana Trial Rule 50(A) provides:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.  A party may move for such judgment on the evidence.

## 1. Statute of Frauds

Indiana's codification of the Statute of Frauds states, in relevant part:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

> * * * * *

> (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

Ind. Code § 32-21-1-1(b).

[17]     In *Holcomb & Hoke Mfg. Co. v. Younge*, 103 Ind. App. 439, 8 N.E.2d 426 (1937), we held the determination of the time period in which the contract is to be completed is a question of fact left to the jury and, if sufficient evidence was presented, the jury's determination thereof is satisfactory. 103 Ind. App. at 439, 8 N.E.2d at 428-29. The Statute of Frauds is an affirmative defense requiring the party pleading it to prove it "by clear and satisfactory evidence." 14 Ind. Law Encyc., *Statute of Frauds* § 46 (2017) (footnotes omitted). Evidence sufficient to prove the defense includes: "existence of the contract, the terms of the contract, the authority of an alleged agent to enter into the contract, the sufficiency of a memorandum of the agreement to satisfy the statute, and the existence or sufficiency of part performance to take the case out of the statute." *Id.*

[18]     The Menefees claim the checks they received in December 2011 violate the Statute of Frauds requirement that agreements longer than a year be written. They claim Alisa's statement the loan was due by January 1, 2013, meant that even if this money was a loan, and not a gift, it was not to be repaid within a year and, thus, was unenforceable because of the writing requirement.

[19]     However, Alisa's Exhibit #5 is an email that states:

> 1. Repayment $100,000 *due in Dec 2012 and Jan 2013* not received. This is the short term funding provided equally by Lance and Alisa in Dec 2011 ($52,000) and Jan 2012 ($48,000) to Greg and Julie equally to help them navigate financial issues with AGM. Although offered, we declined interest with repayment due to the short duration before repayment.

(Ex. Vol. IV at 14) (emphasis added). The jury is the ultimate fact-finder regarding the determination of the time period in which the contract is to be completed. *Holcomb*, 103 Ind. App. at 439, 8 N.E.2d at 438-29. The evidence supports the jury's conclusion that none of the monies were loaned for more than one year. The Menefees' arguments to reconsider and reweigh this evidence is something we cannot do. *See Kimbrough*, 55 N.E.3d at 336 (explaining standard of review).

## 2. Loan v. Gift

[20] When reviewing whether an exchange of money is a gift or a loan, the fact-finder considers "factors such as an expectation or agreement regarding repayment or the accrual and payment of interest." *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1225 (Ind. Ct. App. 1996). If not a gift, there must be "an adequate foundation for a legally implied or created promise to render back its value." *Id. See also Cole v. Cole*, 517 N.E.2d 1248, 1250 (Ind. Ct. App. 1988) (taking into account the character of the debt and the substantial amounts involved, the trier of fact can infer the money was not a gift). *Compare Phegley v. Phegley*, 629 N.E.2d 280, 282 (Ind. Ct. App. 1994) (notation of "loan" on the check and payment of interest imply money was not a gift), *reh'g denied, trans. denied.*

[21] The Menefees claim Lance gifted them $48,000, so Alisa is unable to recover that amount. However, Alisa testified Greg had conveyed to Lance and her that his company was "having financial trouble and that his bank ha[d] a

requirement that he has personal funds of a certain amount[.]" (Tr. Vol. II at 44.) Although Greg had requested the gifting language on the checks because the bank requirements did not allow him to take on any more personal debt, Alisa testified she and Lance intended to make "another short-term loan" to the Menefees. (*Id.* at 46.) The jury was free to determine the surrounding circumstances and the amount of the money indicated the checks were a loan and not a gift. As evidence was presented to support the jury's verdict, we will not reweigh. *See Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 414 (Ind. Ct. App. 1998) (evidence presented supporting the jury's conclusion was not unreasonable and we will not overturn that conclusion).

[22] Because sufficient evidence was presented to support the jury's conclusions as to both the Statute of Frauds and whether the money was intended to be a loan rather than a gift, the trial court did not err when it denied the Menefees' Motion for Judgment on the Evidence. Therefore, we affirm the trial court's ruling.

## B. Attorney Fees - Trial

[23] Parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), *reh'g denied, trans. denied.* Alisa requested attorney fees pursuant to Indiana Code section 34-52-1-1(b), which provides in relevant part, that

the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

[24] Such an award may be made on a finding of any one of the statutory bases. *Smyth*, 901 N.E.2d at 33. However, such a finding must "strike[] a balance between respect for an attorney's duty of zealous advocacy and the important policy of discouraging unnecessary and unwarranted litigation." *Neu v. Gibson*, 968 N.E.2d 262, 278 (Ind. Ct. App. 2012), *trans. denied.*

[25] An award or denial of attorney fees under Indiana Code section 34-52-1-1 is reviewed through a multi-step process. We review findings of fact for clear error, and we review *de novo* the trial court's legal conclusions. *Gaddis v. McCullough*, 827 N.E.2d 66, 75 (Ind. Ct. App. 2005), *trans. denied*. Finally, we review under an abuse of discretion standard the ultimate decision whether to award attorney fees. *Id.*

## 1. Indiana Code section 34-52-1-1

[26] Alisa claims she is entitled to attorney fees because the Menefees have violated all three subsections of Indiana Code section 34-52-1-1: 1) they brought a

defense that was frivolous, unreasonable, or groundless; 2) they continued to litigate such a defense after it was clearly frivolous, unreasonable or groundless; and 3) they litigated their defense in bad faith. She asserts their defense was more than zealous advocacy.

[27] A claim or defense is "frivolous" if it is asserted primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989), *adopted on transfer*, 543 N.E.2d 627, 629 (Ind. 1989). A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider the claim or defense worthy of litigation. *Id.* A claim or defense is "groundless" if no facts support the legal claim presented by the losing party. *Id.* at 170-71. "[A] claim is litigated in 'bad faith' if the party presenting the claim is affirmatively operating with furtive design or ill will." *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1029 (Ind. Ct. App. 1998).

[28] Alisa claims the Menefees had indicated previously, under oath and to Alisa's family, that the money was a loan. To assert otherwise now, she claims, they have defended against her claim in a frivolous, unreasonable, and groundless fashion. The Menefees argue the money was a gift, and they presented testimony from Lance that he intended the money he gave them to be a gift. And, even if the money was not a gift, they defended the claim based on the

Statute of Frauds, which arguably also had factual support in the record. Because there were issues of fact as to whether the money was a loan or a gift, and whether the loan was enforceable, the trial court did not abuse its discretion in finding the Menefees' defense was not frivolous, unreasonable, or groundless. *See Campbell v. Railroadmen's Fed. Sav. & Loan Ass'n of Indianapolis*, 443 N.E.2d 81, 83 (Ind. Ct. App. 1982) (existence of intent is a question of fact).

[29] Alisa claims the Menefees litigated in bad faith because Julie was using this loan amount as a bargaining chip in another lawsuit, Greg made statements about Alisa's mental state, and the Menefees and their attorneys had acted "with furtive design and ill will because of their disdain for Alisa and their financial ability as multi-millionaires to harass Alisa." (Appellant's Br. at 11.) The Menefees counter they did not proceed in bad faith because Lance had intended the money to be a gift. Bad faith is a question of fact determined by the trial court in its discretion. *See Campbell*, 443 N.E.2d at 83 ("bad faith due to the conflicting inferences which could be drawn" is a question of fact). We are not persuaded the trial court's denial of Alisa's request for attorney fees was erroneous based on the facts herein.

## C. Appellate Attorney Fees

[30] Alisa claims she is entitled to appellate attorney fees because the "Menefees' appellate arguments and cross-appeal are frivolous and procedurally and substantively in bad faith." (Appellant's Reply and Response to Cross-Appeal

Br. at 25.) "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66. We will assess appellate damages only against an appellant who in bad faith maintains a wholly frivolous appeal. *Wallace v. Rosen,* 765 N.E.2d 192, 201 (Ind. Ct. App. 2002).

[31] We use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect on the exercise of the right to appeal. *Indiana CPA Society, Inc. v. GoMembers, Inc.*, 777 N.E.2d 747, 753 (Ind. Ct. App. 2002). A strong showing is required to justify an award of appellate attorney fees, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.*

[32] Bad faith on appeal may be "substantive" or "procedural," *Manous v. Manousogianakis,* 824 N.E.2d 756, 768 (Ind. Ct. App. 2005), and Alisa accuses the Menefees of both. Substantive bad faith implies conscious wrongdoing because of "dishonest purpose or moral obliquity." *Wallace,* 765 N.E.2d at 201. There is procedural bad faith when a party flagrantly disregards the form and content requirements of our rules, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Manous,* 824 N.E.2d at 768.

[33] To show procedural bad faith, Alisa alleges the Menefees ignored the applicable standard of review as to their statement of facts and evidence. We do not find these flaws to be so flagrant or significant as to label the appeal vexatious, and we decline to find procedural bad faith that would warrant the imposition of attorney fees.

[34] To prevail on a substantive bad faith claim, the party must show that the other party's contentions and arguments are utterly devoid of all plausibility. *Manous,* 824 N.E.2d at 768. The Menefees rely on Lance's testimony and the Statute of Frauds to advance their argument the jury verdict should be reduced. While we will not reweigh that evidence to rule in the Menefees' favor, we cannot say the Menefees' claim is inconsistent with "reasonable advocacy grounded in established legal principles" or "utterly devoid of all plausibility." *See Indiana CPA Society,* 777 N.E.2d at 753. The Menefees' cross-appeal has sufficient merit and is in sufficient compliance with the Appellate Rules that we decline to award appellate attorney's fees.

# Conclusion

[35] Sufficient evidence was presented to support the jury verdict; thus, the trial court did not err when it denied the Menefees' Motion for Judgment on the Evidence. The record does not demonstrate the trial court abused its discretion when it denied Alisa's motion for attorney fees. As the Menefees did not present a wholly frivolous suit or defense on appeal, we decline to award appellate attorney fees.

[36]    Affirmed.

Barnes, J., and Bradford, J., concur.